# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

**Denis Khokhlov,**  CASE No: 23-cv-1501
**Plaintiff**

v.

**Euroclear SA/NV,**
**Defendant**

# COMPLAINT

Plaintiff, Denis Khokhlov (hereafter "**Plaintiff**"), appearing pro se, sues Defendant, Euroclear SA/NV (hereinafter "**Defendant**") for actual (compensatory) damages that he sustained through negligence and gross negligence of the Defendant, violation of his 14th Amendment rights (due process), interference with international commerce, negligent infliction of emotional distress, deprivation of property, loss of profits, punitive damages, attorney fees and any other remedies that this court may deem appropriate and in support of thereof alleges as follows:

1

## BASIS FOR JURISDICTION

1 U.S. District Court for Southern District of New York (the "Court") has a subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a). It involves diversity of citizenship and Plaintiff's claim is valued in excess of $75 000 (seventy five thousand U.S. dollars) of provable compensatory damages only.

2 Plaintiff is a U.S. law school graduate working for a general contractor company and a domiciliary of Moscow, the Russian Federation.

3 Defendant is an International Central Securities Depositary registered in Belgium and licensed to do business in New York having its representative office registered at 28 Libery Street, 33rd floor, New York, NY 10005.

4 The venue is proper.

5 Defendant is amendable to general personal jurisdiction of this Court pursuant to *NY CPLR §301,* because Defendant's activities are of such a nature and its affiliation with the State of New York is so continuous and systematic as to render the Defendant at home in New York. *Daimler AG v. Bauman, 571 U.S. 117 (2014), Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 131 S.Ct. 2846, 180 L. Ed. 2d 796 (2011), Aybar v. Aybar, 2016 WL 3389889, \*1 (Sup. Ct., Queens County 2016).*

6 Defendant is a global provider of Financial Market Infrastructure that settles for its clients over 295 (two hundred ninety five) million

securities transactions for a value over $1 (one) quadrillion per annum including transaction in relation to U.S. securities with a primary listing on New York Stock Exchange.

7 Defendant's market share in equities and bonds markets for European clients exceeds 50 and 60 per cent accordingly.

8 Defendant is subject to longarm personal (specific) jurisdiction of this Court under "doing business" in New York test within the meaning of *NY CPLR §302 (a) (1)* and settles cross-border securities transaction in relation to U.S. securities listed on New York Stock Exchange.

9 Defendant's usage of electronic means to project itself into New York to conduct business transactions can be subject to longarm jurisdiction for claims arising from the transactions. *Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 21 AD3d 90.*

10 Defendant is subject to longarm personal jurisdiction of this Court under *NY CPLR §302 (a) (3)* by having committed tortious act outside of the State of New York in relation to Plaintiff's property within the State of New York depriving Plaintiff of his property to which he has no longer access.

11 Without any notice or good cause, Defendant suspended its regular settlement operations with its counterparty, which disrupted chain of depository settlement operations and negligently caused freezing of Plaintiff's U.S. securities with primary listing on New York Stock Exchange.

12 Defendant regularly does business and derives substantial revenue from services that it renders in relation to U.S. securities in

3

the State of New York as provided for in *NY CPLR §302 (a) (3) (i)*, and should reasonably expect to have consequences in the State of New York in the meaning of *NY CPLR §302 (a) (3) (ii)*, considering that Defendant has an unmatchable exposure to international commerce.

## STATEMENT OF CLAIM

### (Negligence and Gross Negligence)

13 Defendant suspended its regular settlement operations with its counterparty without a notice or good cause, breaching duty of care that he owes to general investment community, including Plaintiff. Defendant interfered with international commerce and caused Plaintiff suffer damages, depriving Plaintiff of his property if form of U.S. Securities listed on New York Stock Exchange.

14 Defendant is the leading settlement services provider with a dominant position on the market.

15 The Defendant describes itself on its webpage as a "*global provider of Financial Market Infrastructure (FMI) services, who helps you to be more successful by making it easier for you to settle domestic and cross-border securities transactions and safekeeps your investments.*"

16 Defendant also represents that "*it helps you manage risks and exposure arising from your transactions*".

17 Defendant's role in ensuring stability and safety of financial markets is crucial since it makes sure that each transacting party gets delivery of everything he contracts for.

18 Defendant's shareholding structure consists of 88 shareholders among which the world's most prominent financial institutions - J.P. Morgan, Morgan Stanley, Sumitomo, HSBC, Société Générale etc.

19 Considering unique position of the Defendant, its delicate nature of services that entails a decent amount of trust, its market share and its role in ensuring stability and safety of financial markets, Defendant **owes duty of care** to general investment community, including Plaintiff.

20 Starting February 28, 2022 and without any good cause or official notification Defendant suspended execution of instructions received from its counterparty - **a then non-sanctioned** National Securities Depository ("NSD") of the Russian Federation, failing to use even slight level of care and demonstrated complete disregard to the rights of Plaintiff.

21 **Defendant's breach of duty of care resulted** in Plaintiff's inability to access his U.S. securities with a balance value of $300 000 (three hundred thousand U.S. dollars) excluding accrued dividends.

22 On June 3, 2022, three months following the date of unwarranted suspension of settlement operations with NSD, the European Commission imposed sanctions on NSD prohibiting any dealings with it.

23 Apparently, Plaintiff was not the target of Defendant's actions and sanctions of the European Commission. However, **because of Defendant's negligent acts** Plaintiff could not dispose of the securities during the three months' suspension period or transfer

them into another depositary, excluding NSD from the chain of ownership.

24 On October 10, 2022, the European Commission allowed de-freezing securities of non-sanctioned Russian investors with no clear guidelines.

25 On August 19, 2022 Office of Foreign Assets Control of the Department of Treasury of the United States issued a general license permitting non-sanctioned individuals to transfer their assets from sanctioned financial institutions to non-sanctioned financial institutions.

26 As of today we have a situation where a 1) non-sanctioned individual, 2) who is a graduate of U.S. law school, 3) who has no relation to the government of Russia, 4) whose mother was born in Ukraine, 5) whose close siblings live in Ukraine and 6) whose cousin was called to serve his duty on Ukrainian military during this horrible war, and 7) for whom this war is a family tragedy, is deprived of his property by Defendant without any due process of law.

27 Plaintiff suffered emotional distress because he was deprived by the Defendant of his personal "financial cushion" in this turbulent time and had to drastically cut his expenses.

28 At a U.S. law school that Plaintiff attended, he was taught that "no one can be deprived of his liberties or property without due process of law" and that right of private property is unfettered. With this knowledge and strong believe in the rule of law, Plaintiff invested his money in U.S. securities, most of them are "blue chip" companies.

29 The harm done by the Defendant to the Plaintiff was a **foreseeable** consequence of the Defendant's failure to uphold the duty.

30 Plaintiff tried to amicably resolve the dispute with the Defendant prior to filing said Complaint. Plaintiff sent his claim to the Defendant's office with contact details and invitation to discuss this matter.

31 Defendant ignored all said attempts by Plaintiffs.

32 Plaintiff's claims from Defendant 1) $300 000 (three hundred thousand U.S. dollars) in compensatory damages; 2) $80 000 (eighty thousand U.S. dollars) in lost profits; 3) $500 000 (five hundred thousand U.S. dollars) in punitive damages; 4) attorney fees as the case may be and any other remedies that this Court may deem appropriate.

## **PRAYER FOR RELIEF**

33 Enter judgement that Defendant owed duty of reasonable care to Plaintiff.

34 Enter judgement that Defendant breached its duty of reasonable care to Plaintiff.

35 Enter judgement requiring Defendant to pay and to reimburse Plaintiff for all damages (including but not limited to compensatory, lost profits and punitive), costs, expenses and attorney fees incurred in relation to this action and for any judgement or other relief

obtained by the Plaintiff against the Defendant in respect of any of the claims asserted in the Complaint.

Dated: February 18, 2023                    Respectfully submitted by:

Denis A. Khokhlov

Address:
1909 East 17th Street
Brooklyn, NY 11229
Tel:(917) 612-7439
Tel: (011) 7 985-747-5338
dx12208@yahoo.com